1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  ROBERT R. CREAGER,                      No. C 05-01985

12            Plaintiff,

13     v.                                    **ORDER DENYING DEFENDANT
                                             YOSHIMOTO'S MOTION TO DISMISS
14  MASUO YOSHIMOTO, an individual, M.P.     FOR LACK OF PERSONAL
    TECHNOLOGIES, INC., a corporation and    JURISDICTION AND IMPROPER
15  M2M, INC., a corporation,                SERVICE; DENYING CORPORATE
                                             DEFENDANTS' MOTIONS TO DISMISS
16            Defendants.                     FOR LACK OF PERSONAL
                                             JURISDICTION AND RESERVING ON
17  _____/        ALTERNATIVE MOTION TO DISMISS
                                             FOR *FORUM NON CONVENIENS***

18

19        Now before the Court are the following motions: (1) the motion to dismiss brought by

20  Defendant Masuo Yoshimoto for lack of personal jurisdiction and improper service of process of the

21  summons and complaint; (2) the motion to dismiss brought by Defendant M.P. Technologies, Inc.

22  ("MPT") for lack of personal jurisdiction and, in the alternative, to dismiss pursuant to the doctrine

23  of forum non conveniens; (3) the joinder by Defendant M2M, Inc. ("M2M") in MPT's motion; and

24  (4) the joinder by Yoshimoto in MPT's motion.  Having carefully reviewed the parties' papers and

25  considered the relevant legal authority, the Court DENIES Yoshimoto's motion for dismiss for lack

26  of personal jurisdiction and improper service of process; DENIES MPT's motion to dismiss for lack

27

28

United States District Court

For the Northern District of California

of personal jurisdiction; DENIES the Defendants' joinder on the same grounds; and RESERVES ruling on MPT's motion to dismiss in the alternative for *forum non conveniens*.

## BACKGROUND

Plaintiff, Robert R. Creager, alleges that Defendants, Yoshimoto and the two corporate entities, MPT and M2M, are liable for breach of contract and fraud relating to a written agreement between the two individuals. The written agreement created a new company, AMG Media Vision, Inc. ("AMG") whose purpose was to identify potential acquisition candidates in order to increase MPT's international presence, and then assist in negotiations with the targeted companies. Creager filed his complaint in this Court on May 13, 2005, and served Yoshimoto in San Francisco, California on May 14, 2005. Additionally, Creager has served the two corporate Defendants, MPT and M2M, under the international procedures set out in the Hague Convention.

Yoshimoto, a Japanese resident and citizen, and Creager, a resident of San Francisco, California, executed a Memorandum of Understanding ("MOU") in July 2004 in which they created AMG, a Delaware Corporation with its principal place of business in California. (Complaint, Ex. A.) Prior to the execution of the MOU, Creager and Yoshimoto had never worked together, nor were they acquainted. In April 2004, Yoshimoto met with Mika Saitoh, his business acquaintance and Plaintiff's girlfriend, and expressed his desire to expand MPT's customer base outside of Japan and China. (Declaration of Mika Saitoh ("Saitoh Decl.") at ¶ 7.) Saitoh informed Yoshimoto of her relationship with Creager, who Yoshimoto already had heard of by reputation, and Yoshimoto expressed his interest in meeting with Creager and exploring whether he could help MPT achieve the dominant international presence that Yoshimoto wished MPT to have. (*Id*.) Following Saitoh and Yoshimoto's conversation in April 2004, Creager and Yoshimoto met and conversed during April and July 2004 in order to negotiate the terms of the MOU, which the parties ultimately signed in Australia.

United States District Court

For the Northern District of California

The MOU outlined the terms of the agreement, whereby Creager would head AMG in San Francisco, and look for target companies which MPT could then acquire. Under the MOU, in order to keep costs down, initial AMG employees were required to work from home. (Complaint, Ex. A.) During the tenure of the company, AMG had three employees, all California residents. (Declaration of Robert R. Creager ("Creager Decl.") at ¶ 5.) While the MOU outlined long term goals for AMG to achieve, on March 2, 2005 Yoshimoto announced to Creager "that there would be no further funding of AMG." (Creager Decl., Ex. B.)

Yoshimoto is the founder, CEO, board chairman, and major shareholder of MPT, a Japanese corporation listed on the Tokyo Stock Exchange Mothers Section. (Declaration of Laura Schlictmann ("Schlictmann Decl."), Ex. B; Declaration of MasuoYoshimoto ("Yoshimoto Decl."), at ¶ 2.) With regard to the events surrounding the MOU and leading up to this lawsuit, Creager and other AMG employees' primary contacts with MPT were with Ryuzo Nakazumi, MPT's Executive Vice President. (Saitoh Decl., ¶ 12.) Because the two companies were located so far from one another, much of the communication between AMG and MPT employees took place over electronic mail and telephone. Additionally, AMG and MPT employees had several in-person meetings in California, Canada, Japan and elsewhere. (Creager Decl., ¶ 6; Saitoh Decl., ¶¶ 12-17.)

M2M is a Japanese limited liability company and investment vehicle, wholly owned by Yoshimoto, along with his daughter and son. (Yoshimoto Decl., ¶ 3.) Yoshimoto is a partner and controlling shareholder of M2M. (Schlichtmann Decl., Ex. B.) M2M is the 100% shareholder of AMG, as it provided AMG with $500,000 in start-up monies. (Mullen Decl., Ex. A at 8; Complaint, Ex. A.) M2M and Yoshimoto filed an action against Creager in the Tokyo District Court on August 25, 2005. (Mullen Decl. at 1.)[1]

---

[1]     The Court has considered Plaintiff's evidentiary objections and, to the limited extent the Court relied upon evidence objected to in resolving Defendants' motions, the objections are overruled.

United States District Court
For the Northern District of California

**ANALYSIS**

I.     **Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.**

       A.     **Applicable Legal Standard.**

       A court may properly exercise personal jurisdiction over a non-resident defendant when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).  To meet this standard, the Court must assess whether the non-resident defendant's conduct and connection with the forum state are such that the defendant would "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980).  Specifically, the Court must find that the non-resident defendant has "'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted).

       Creager's complaint does not invoke a federal statute governing personal jurisdiction. Therefore, this Court must apply California's personal jurisdiction standard. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002).  California Code of Civil Procedure § 410.10, governing personal jurisdiction, is coextensive with federal due process requirements. *Id.*  Here, the parties do not make any claim for general jurisdiction in which a defendant's contacts with the forum are "substantial" or "continuous and systematic." *See, e.g., Data Disc Inc., v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).  Rather, Creager contends that the Court should exercise specific jurisdiction where "the issue or whether jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action." *See id.*  The Court must apply a three-part test to determine whether specific jurisdiction exists over a non-resident defendant:  (1) the non-resident defendant must purposefully direct his activities or

4

consummate some transaction with the forum or resident thereof, or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;  (2) the claim must be one which arises out of or relates to the defendant's forum related conduct; and (3) the exercise of jurisdiction must comport with notions of fair play and substantial justice.  *Dole*, 303 F.3d at 1111 (citations omitted).

  **B.**  **Yoshimoto is Subject to Personal Jurisdiction in California.**

    **1.**  **Yoshimoto's Purposeful Availment with California.**

  Creager contends that the business relationship he formed with Yoshimoto, along with the creation of AMG and the communication between the two parties during the period August 2004 through May 2005 are all sufficient to demonstrate that Yoshimoto purposefully availed himself of the benefits and protections of California law.  The Court must first look at a "qualitative evaluation of the defendant's contact with the forum state."  *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). In analyzing purposeful availment in breach of contract actions, the Court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  *Burger King*, 471 U.S. at 479.  Finally, California courts have held that "the use of electronic mail and the telephone by a party in another state may establish sufficient minimum contacts with California to support personal jurisdiction."  *Hall v. LaRonde*, 56 Cal. App. 4th 1342, 1344 (1997).

  Yoshimoto entered into a contract with a California resident which created a business relationship between the two parties.  Under the MOU, Yoshimoto and Creager created a new company, AMG, a Delaware corporation with its principal place of business in California. (Complaint, Ex. A; Muller Decl., Ex. A at 5.)  The MOU specifically stated, "Yoshimoto and [] Creager agree to work together to create a Delaware company to be named 'AMG' which will have the responsibility for identifying and managing acquisition targets outside Japan and China which

United States District Court

For the Northern District of California

are complementary to MPT's business generally but with initial emphasis on targets in the hospitality industry."  (Complaint, Ex. A.)  The MOU further provided that AMG employees would work from home and that they would receive "company-paid benefits competitive in Silicon Valley."  *Id.*

Creager and Yoshimoto's actual course of dealing demonstrates not just a one-time agreement, or isolated connection with California, but rather a business relationship with long-term goals.  *See Burger King*, 471 U.S. at 479 (noting the court must evaluate "contemplated future consequences, along with the terms of the contract and the parties' course of dealing").  Where parties form an "ongoing business relationship" and where defendant "made multiple trips and phone calls to [the forum state] in furtherance of that relationship," that may be sufficient to exercise personal jurisdiction over a non-resident defendant.  *Latshaw v. Johnston*, 167 F.3d 208, 213 (5th Cir. 1999).  As provided in the MOU, Creager and Yoshimoto's joint business venture was formed with long-term goals in mind: "[t]he ultimate goal is for AMG to become, *within three years*, a US public company on the NASDAQ stock exchange."  (Complaint, Ex. A) (emphasis added.)  The MOU is not a one-time agreement between the two parties, but rather a contract which contemplates a long-term "future relationship."  *Cf Federal Deposit Ins. Corp. v. British-American Ins. Co.*, 828 F.2d 1439, 1443 (9th Cir. 1987) (holding a one-time agreement, standing alone, is not sufficient to exercise personal jurisdiction over a non-resident defendant).

Additionally, Yoshimoto had a high level of communication with AMG employees to further his business goal of expanding his business outside of Japan and China.  California courts have held, "the use of electronic mail and the telephone by a party in another state may establish sufficient minimum contacts with California to support personal jurisdiction."  *Hall*, 56 Cal. App. 4th at 1347.  The *Hall* court noted the importance of electronic mail and telephone communication between the California plaintiff and New York defendant in addition to the "continuing obligation" the non-

United States District Court

For the Northern District of California

1  resident defendant created with the plaintiff.  *Id.*  According to AMG employees, they had regular

2  communication with Yoshimoto between July 2004 and May 2005, in addition to meeting with him

3  in-person on several occasions primarily in California, Japan and Canada and also elsewhere.

4  (Creager Decl., ¶ 6; Saitoh Decl., ¶¶ 12-17.)  Yoshimoto traveled to California on several occasions

5  to meet with AMG employees and AMG and MPT business contacts.  (*Id.*)  Because Yoshimoto has

6  purposefully availed himself of the benefits and protections of California, the first prong to establish

7  jurisdiction over Yoshimoto has been met.

8

9                    **2.        Creager's Claim Relates to Yoshimoto's Contacts with California.**

10          Creager's complaint alleges that Yoshimoto caused him injury which arises out of the

11  contract between the two individuals.  The second prong to establish personal jurisdiction over a

12  non-resident defendant requires that plaintiff's claim is one "which arises out of or relates to the

13  defendant's forum related activities."  *Dole*, 303 F.3d at 1111.  The MOU created a company with

14  its principal place of business in California and the business relationship between the two parties

15  involved significant contacts with California.  Because Creager's claims arise out of the breach of

16  the MOU, the second prong to establish jurisdiction over Yoshimoto has been met.

17

18                    **3.        Exercising Personal Jurisdiction Over Yoshimoto Comports with Notions
19                               of Fair Play and Substantial Justice.**

20          In order to determine whether exercising personal jurisdiction over a non-resident defendant

21  comports with the notions of "fair play and substantial justice" this Court must consider seven

22  reasonableness factors:  (1) the extent of purposeful interjection into the forum state; (2) the burden

23  on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of

24  defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

25  judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in

26  convenient and effective relief; and (7) the existence of an alternative forum.  *Federal Deposit Ins.*

27

28

*Corp.*, 828 F.2d at 1442 (citations omitted).  The Court must balance the seven factors in order to determine whether the exercise of personal jurisdiction over the defendant would be reasonable. *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).

### a. Purposeful Interjection.

Generally, the factor of purposeful interjection is analogous to the purposeful availment analysis.  *Id.*  Because this Court has determined that Yoshimoto directed his activities toward a California resident by virtue of the formation of AMG, he has purposefully availed himself of the benefits and protections of the forum.  Therefore, this factor favors Creager.

### b. Yoshimoto's Burden of Defending in California.

Yoshimoto is a Japanese resident, thus litigating in California would be burdensome.  While this factor weighs in favor of Yoshimoto, "this factor is not dispositive."  *See Dole*, 303 F.3d at 1115.  There are additional factors that mitigate this burden such as "[m]odern advances in communication and transportation" which "have significantly reduced the burden of litigating in another country.  *Id.*  Additionally, Yoshimoto is able to speak, read and write in English and has traveled to this state on multiple occasions.

### c. Conflict with the Sovereignty of Japan.

The Court must examine the sovereign interests of the non-resident defendant.  *Dole*, 303 F.3d at 1115.  This factor requires an examination of Japan's sovereign interests in regulating Yoshimoto's behavior.  *See id.*  Yoshimoto, a Japanese citizen and resident, has filed a suit against Creager in Japan, all of which favor defendant.  However, this factor cannot be dispositive because, if given controlling weight, it would always prevent suit against a foreign defendant in a United States court.  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984).

### d. California's Interest.

California has a strong interest in providing a forum for its residents.  *Panavision Int'l,*

*L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). "California has an interest in providing a forum for companies doing business there." *Data Disc*, 557 F.2d at 1288. Here, Yoshimoto is conducting business in California by entering in a business relationship with Creager, a California resident, to form AMG, a company headquartered in California whose sole purpose is to identify local, national and international acquisition targets for Yoshimoto's company. Therefore, this factor favors Creager.

### e. Most Efficient Resolution.

It is unclear whether or to what extent Japanese or California law governs the entirety of this dispute. Absent a choice of law provision in the governing contract, the Court presumes California law to apply unless there is a compelling reason to displace state law with the law of the foreign jurisdiction. *See Browne v. McDonnell Douglas Corp.*, 504 F. Supp. 514, 517 (N.D. Cal. 1980). However, there may be other issues before the Court beside the alleged breach of the MOU, such as the scope of the business parties' corporate identities, which may or may not fall under Japanese law. Additionally, witnesses, documents and other evidence may be located internationally. The parties executed the MOU in Australia, Yoshimoto resides in Japan and Creager resides in California. Both individuals traveled internationally in furtherance of the creation and ongoing business of AMG. Additionally, because the parties reside so far from one another, many of the communications between them are over electronic mail and the telephone. Accordingly, because the applicable law governing the whole dispute is unclear and because evidence and witnesses may be located internationally, this factor does not favor either party. *See generally Dole*, 303 F.3d at 1116.[2]

---

[2] Many of the same factors involved in the analysis under the doctrine of *forum non conveniens* arise in the analysis of the efficiency of the relative forum under this reasonableness factor. Because the Court was not provided with sufficient information to make a thorough analysis of the *forum non conveniens* determination, the Court has reserved ruling on the alternative motion by the corporate defendants. The Court finds this factor in equipoise mainly because it has not been provided with

**United States District Court**
For the Northern District of California

**f.      Convenience to Creager.**

Because Creager is a California resident, this Court is more accessible to him.   "However, in this circuit, the plaintiff's convenience is not of paramount importance." *Dole*, 303 F.3d at 1116 (citations omitted).   Accordingly, this factor weighs in Creager's favor, but not overwhelmingly so.

**g.      Alternative Forum.**

Both Japan and California are available forums for the parties' disputes. *See Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 769 n.3 (9th Cir. 1991) (noting that a Japanese court is an adequate alternative forum).   Because both forums are acceptable, this factor does not favor either party.

**h.      Balancing the Reasonableness Factors.**

Defendants bear a heavy burden of proving a "compelling case" of unreasonableness in order to defeat jurisdiction. *See Dole*, 303 F.3d at 1117.   Here, two of the seven factors favor Yoshimoto. But as *Dole* noted, "[b]y their very nature, these two factors are likely to favor foreign defendants every time personal jurisdiction in the United States is considered." *Id.*   Accordingly, Yoshimoto has failed to overcome the heavy burden of demonstrating it is unreasonable for him to litigate this matter in California.   As such, all three elements necessary to establish personal jurisdiction over Yoshimoto have been met.   Therefore, the Court DENIES Yoshimoto's motion to dismiss for lack of personal jurisdiction.

**4.      Service of Process on Yoshimoto was Proper.**

**a.      Legal Standard.**

Federal courts cannot exercise personal jurisdiction over a defendant without proper service of process. *Omni Capital Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97, 104 (1987).   Insufficient service

sufficient information from the parties.

can result in dismissal under Federal Rule of Civil Procedure 12(b)(5); or alternatively the Court may elect to quash service of process and require plaintiff to re-serve defendant. *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985). Plaintiff has the burden of establishing validity of service of process if service is contested. *Grand Entm't Group Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

### b.   Yoshimoto was Properly Served.

Yoshimoto contends that service on him was improper due to Creager's trickery and deception in order to effectuate service of process. Generally, when a plaintiff has induced a defendant to enter a jurisdiction where service is to be effectuated without warning the defendant of the potential risk of being served, the court has discretion to quash service or dismiss the action as a result of insufficient service of process. *See generally Henkel Corp. v. Degremont*, 136 F.R.D. 88, 94-95 (E.D. Pa. 1991); *K-Mart Corp. v. Gen. Star Industries*, 110 F.R.D. 310, 312 (E.D. Mich. 1986); *Coyne v. Grupo Indus. Triame, S.A. de C.V.*, 105 F.R.D. 627, 629 (D.D.C. 1985). However, where courts quash service or dismiss the action due to a plaintiff's trickery in effectuating service of process, this Court has found it is "where [defendant] ha[s] no prior contacts before litigation begins so that service upon them is a complete surprise." *SGS-Thomson Microelectronics, Inc. v. United Microelectronics Corp.*, 1993 WL 299230 *2 (N.D. Cal. 1993).

Yoshimoto did in fact have prior contacts with California before this litigation began. Further, according to the record, at the time he was served it appears that Yoshimoto was in San Francisco for other business reasons. (Yoshimoto Decl., ¶ 13; Creager Decl., ¶ 34, Ex. E.) Accordingly, because Yoshimoto had established prior contacts in California, service of process was sufficient. *SGS-Thomson Microelectronics*, 1993 WL 299230 *2. Thus, the Court DENIES Yoshimoto's motion to dismiss for insufficient service of process.

United States District Court
For the Northern District of California

**B.      MPT is Subject to Personal Jurisdiction in California Under an Agency Theory.**

Under an agency theory, the contacts that Yoshimoto established with California are imputed to MPT.  "In determining the sufficiency of a defendant's contacts . . . actions relevant to the transaction by an agent on defendant's behalf" are also to be considered to establish personal jurisdiction.  *Ochoa v. J.B. Martin & Son Farms, Inc.*, 287 F.3d 1182, 1189 (9th Cir. 2002).  Principals can ratify the actions of its agent by "support, acceptance and follow through on the efforts initiated."  *Wessels v. Nat'l Medical Waste*, 65 F.3d 1427, 1433 (8th Cir. 1995)  For a plaintiff to prevail on a jurisdictional question relying on an agency theory, he need only "establish a prima facie showing of jurisdictional facts."  *Data Disc*, 557 F.2d at 1285 n.2.

Although MPT has no officers, directors, employees, business offices or residences in California, Plaintiff makes out a prima facie case that Yoshimoto, as MPT's founder, CEO, board chairman, and major shareholder, served as MPT's agent with reference to the MOU.  (Schlictmann Decl., Ex. B; Yoshimoto Decl. at ¶ 2.)  The MOU specifically provided that, "AMG will have the responsibility for identifying and managing acquisition targets outside Japan and China which are complementary to MPT's business generally . . . ."  (Complaint, Ex. A.)  The actions of MPT as an entity and through its employees demonstrate its support, acceptance and follow-through of the agreement Yoshimoto made with Creager.  Yoshimoto was actively involved with Creager's work in identifying and acquiring companies on MPT's behalf.  This active involvement is evidenced by many emails, phone calls, and in-person meetings which took place world-wide.  (Creager Decl., ¶ 6; Saitoh Decl., ¶¶ 12-17.)  MPT's Executive Vice President, Ryuzo Nakazumi, was also actively involved in working with Creager and AMG employees in MPT expansion.  Nakazumi communicated with Creager and AMG employees over the telephone and by electronic mail, and visited California to help scout and work on acquisition development.  (Creager Decl. at ¶¶ 8-9, 18, 22-28; Saitoh Decl., ¶¶ 12, 15-17.)  While Yoshimoto signed the contract with Creager, all work that

12

AMG allegedly performed was for the direct benefit of MPT.

Here, because MPT allegedly took actions which supported, accepted and followed through on the decisions that Yoshimoto made, the contacts that Yoshimoto established with California can be imputed to MPT under an agency theory. *See Wessels*, 65 F.3d at 1433. Accordingly, Creager has made a prima facie showing of an agency relationship between Yoshimoto and MPT. *See Data Disc*, 557 F.2d at 1285 n.2. Therefore, the Court maintains personal jurisdiction over MPT and DENIES MPT's motion to dismiss based on lack of personal jurisdiction.

**C.     M2M is Subject to Personal Jurisdiction in California Under an Agency Theory.**

This Court has personal jurisdiction over M2M, as its agent Yoshimoto, entered into a contract whereby a business relationship was created with a California resident and a new company was formed with its principal place of business in California. M2M, like MPT, does not have officers, directors, employees or an office, address or business listing in California. However, M2M owns 100% of the AMG shares. (Mullen Decl., Ex A at 8.) In addition, the same agency principles apply to M2M as the record reflects that M2M ratified the MOU by providing $500,000 in start up monies to AMG. (Mullen Decl., Ex. A at 8; Complaint, Ex. A); *see also Wessels*, 65 F.3d at 1433 (principal can ratify its agents actions by "support, acceptance and follow through on the efforts initiated.").

Here, again, because M2M allegedly took actions which supported, accepted and followed through on the decisions that Yoshimoto made, the contacts that Yoshimoto established with California can be imputed to M2M under an agency theory. *See Wessels*, 65 F.3d at 1433. Accordingly, Creager has made a prima facie showing of an agency relationship between Yoshimoto and M2M. *See Data Disc*, 557 F.2d at 1285 n.2. Therefore, the Court maintains personal jurisdiction over M2M and DENIES M2M's motion to dismiss based on lack of personal jurisdiction.

13

**II.      Corporate Defendants' Motion to Dismiss Pursuant to *Forum Non Conveniens*.**

**A.      Legal Standard.**

The party moving to dismiss the action based on *forum non conveniens* bears the burden to show "(1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole*, 303 F.3d at 1118.  Generally a "plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country." *Id.* (citations omitted).  The moving party's burden in moving to dismiss based on *forum non conveniens* is quite high because "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gates Learjet,* 743 F.3d at1334-35 (9th Cir. 1984) (citations omitted).

**1.      Adequate Alternative Forum.**

Japanese courts provide an adequate alternative forum.  *See Lockman*, 930 F.2d at 769 n.3. Therefore, the Court must balance the private and public interest factors.

**2.      The Private Interest Factors.**

The Court must weigh the following private interest factors:

(1)  the residence of the parties and the witnesses;

(2)  the forum's convenience to the litigants;

(3)  access to physical evidence and other sources of proof;

(4)  whether unwilling witnesses can be compelled to testify;

(5)  the cost of bringing witnesses to trial;

(6)  the enforceability of the judgment; and

(7)  all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  The district court must look at any or all of the factors which are

*United States District Court*
For the Northern District of California

relevant to the specific matter, and considering them together, arrive at a balanced conclusion. *See id.* at 1145-46.

### 3. The Public Interest Factors.

In addition, the Court must consider the following public interest factors:

(1) local interest of the lawsuit;

(2) the court's familiarity with the governing law;

(3) the burden on local courts and juries;

(4) court congestion; and

(5) the costs resolving a dispute unrelated to this forum.

*Id.* at 1147.

### B. The Court Reserves Determination and Sets Out Discovery.

Because the Court finds that the parties have failed to address both the private and public interest factors with any specificity, the Court HEREBY RESERVES ruling on the pending motion to dismiss pursuant to the doctrine of *forum non conveniens*. The parties shall meet and confer in advance of the case management conference set for December 16, 2005 at 1:30 p.m. to arrive at agreed-upon discovery plan and briefing schedule for the limited purpose of supplementing the record with regard to the enumerated private and public interest factors required by this Court to make a reasoned analysis on the *forum non conveniens* issue. In their joint case management statement, due on December 9, 2005, the parties should address the specific, limited discovery on the enumerated factors, an expedited timeline for responses, and a proposed schedule for supplemental briefing to the Court on the *forum non conveniens* issues. Upon further briefing, the Court will resolve the pending motion to dismiss.

### CONCLUSION

For the foregoing reasons, the Court DENIES Yoshimoto's motion for dismiss for lack of

**United States District Court**
For the Northern District of California

personal jurisdiction and improper service of process; DENIES MPT's motion to dismiss for lack of personal jurisdiction; DENIES the Defendants' joinder on the same grounds; and RESERVES ruling on MPT's motion to dismiss in the alternative for *forum non conveniens*.


**IT IS SO ORDERED.**


Dated:  November 22, 2005

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

16