1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT

7          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
9
ROBERT R. CREAGER,                          No. C 05-01985 JSW

10              Plaintiff,

11     v.                                   **ORDER DENYING DEFENDANTS'
                                            MOTION TO DISMISS FOR
12  MASUO YOSHIMOTO, an individual, M.P.    FORUM NON CONVENIENS**
    TECHNOLOGIES, INC., a corporation, and
13  M2M, INC., a corporation,

14              Defendants.

15
                                          /
16

17

18          Now before the Court are the following motions: (1) the motion to dismiss brought by

19  Defendant M.P. Technologies, Inc. ("MPT") pursuant to the doctrine of forum non conveniens; (2)

20  the joinder by Defendant M2M, Inc. ("M2M") in MPT's motion; and (3) the joinder by Defendant

21  Masuo Yoshimoto ("Yoshimoto") in MPT's motion.  Having carefully reviewed the parties' papers

22  and considered the relevant legal authority, the Court DENIES Defendants' motion to dismiss for

23  forum non conveniens.  The Court finds this present motion appropriate for decision without oral

24  argument and hereby VACATES the hearing set for March 17, 2006. *See* Civil L.R. 7-1(b).

25

26                              **BACKGROUND**

27          Plaintiff Robert R. Creager ("Plaintiff"), a San Francisco resident and United States citizen,

28  entered into a written agreement with Yoshimoto, a Japanese resident and citizen.  The two

United States District Court

For the Northern District of California

individuals executed the agreement, a Memorandum of Understanding ("MOU"), in Australia in July 2004. The MOU created a new company, AMG Media Vision, Inc. ("AMG"), a Delaware Corporation with its principal place of business in California.

The agreement provided that Plaintiff would serve as Chief Executive Officer of the San Francisco-based AMG and target potential acquisitions for MPT, a Japanese corporation founded and run by Yoshimoto. AMG received all of its start-up monies from M2M, a Japanese limited liability company owned by Yoshimoto and two of his children.

During AMG's operation, MPT acquired Canada-based Guest-Tek Interactive Entertainment Ltd. ("Guest-Tek"), California-based LogicLink, Inc. ("LogicLink"), and Singapore-based MagiNet Corporation ("MagiNet"). In March 2005, Yoshimoto informed Plaintiff that funding for AMG would cease. As a result, Plaintiff alleges breach of contract and fraud causes of action against Yoshimoto and the two corporate identities. Defendants now request dismissal for forum non conveniens.

**LEGAL STANDARD**

"A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citations omitted). The party moving to dismiss the action based on forum non conveniens bears the burden to show "(1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002).

Courts consider the following private interest factors:

(1) the residence of the parties and the witnesses;
(2) the forum's convenience to the litigants;
(3) access to physical evidence and other sources of proof;
(4) whether unwilling witnesses can be compelled to testify;
(5) the cost of bringing witnesses to trial;

United States District Court
For the Northern District of California

2

(6)  the enforceability of the judgment; and

(7)  'all other practical problems that make trial of a case easy, expeditious and inexpensive.'

*Lueck*, 236 F.3d at 1145 (citations omitted).

In addition, courts consider the following public interest factors:

(1)  local interest of the lawsuit;

(2)  the court's familiarity with the governing law;

(3)  the burden on local courts and juries;

(4)  court congestion; and

(5)  the costs resolving a dispute unrelated to this forum.

*Id.* at 1147 (citations omitted).  The district court must look at any or all of the factors which are relevant to the specific matter, and considering them together, arrive at a balanced conclusion.  *Id.* at 1145-46.

A plaintiff's choice of forum receives great deference and a strong ground for retention of jurisdiction exists.  *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 n.8 (9th Cir. 2006).  Therefore, the defendant's burden in moving to dismiss based on forum non conveniens is quite high.  A "plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors *strongly* favor trial in the foreign country."  *Dole,* 303 F.3d at 1118 (citations omitted) (emphasis added).  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1334-35 (9th Cir. 1984) (citations omitted).

**ANALYSIS**

**A.**  **Adequate Alternative Forum.**

Japanese courts provide an adequate alternative forum.  *See Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 769 n.3 (9th Cir. 1991).

**B.**  **Balance of Public and Private Interest Factors.**

"Given the existence of an adequate alternative forum, a district court must consider the balance of private and public interest factors to determine whether to dismiss on grounds of forum

United States District Court

For the Northern District of California

3

non conveniens." *Id.* at 769 (citations omitted).

**1.      Private Interest Factors**

**a.      Residence of the Parties and Witnesses.**

Plaintiff resides in San Francisco, California.  Yoshimoto resides in Tokyo, Japan.  M2M and MPT are Japanese corporate identities.

Plaintiff names 30 material witnesses.  (Declaration of Robert R. Creager ("Creager Decl."), Ex. A.)  Half of these witnesses reside in California, with the remainder in Mississippi, Canada, England, Germany, Australia, Japan, Singapore, and Korea.  (*Id.*)  Rather than focus on the specific number of witnesses, the Court "examine[s] the materiality and importance of the anticipated witnesses' testimony and then determine[s] their accessibility and convenience to the forum." *Gates Learjet*, 743 F.2d at 1335-36.  Plaintiff explains the importance of each witness and identifies 10 of the 30 witnesses as those most knowledgeable.  (Creager Decl., Ex. A.)  Again, half of these important witnesses reside in California, with the remainder in Canada, Japan, and Singapore.  (*Id.*)  The witnesses identified as most knowledgeable include himself; Yoshimoto; AMG's Director of Business Development; AMG's lead counsel, who worked on Plaintiff's employment contract and acquisition agreements; MPT's Chief Operations Officer; MPT's lead counsel, who worked on acquisition agreements; and four Chief Executive Officers of companies that became potential or actual acquisitions of MPT through AMG's efforts.  (*Id.*)

Defendants name 39 material witnesses.  (Creager Decl,. Ex. B at 3-7.)  The location of these witnesses is split between North America, with 22 from California and Canada, and Asia, with 17 from Japan and Singapore.  (*Id.*)  Although Defendants do not distinguish which witnesses have the most knowledge, Defendants' list includes 14 of Plaintiff's named witnesses, including nine of Plaintiff's 10 most knowledgeable.  Also, Defendants emphasize the importance of the MagiNet

United States District Court

For the Northern District of California

transaction as the highest value acquisition and believe the related witnesses should be weighed accordingly. (MPT's Brief ("MPT Br.") at 2; Yoshimoto and M2M's Brief ("Joint Br.") at 2-3.) All 11 MagiNet witnesses reside in Singapore. (Creager Decl., Ex. B at 4-5.) It appears, however, that several of the MagiNet witnesses serve redundant roles and could be consolidated. (*See id.* at 5.)

Plaintiff claims that several of Defendants' non-California witnesses, including the majority of the MagiNet witnesses, did not participate in the negotiations giving rise to the issues in this case and therefore do not have material and important knowledge. (Plaintiff's Brief in Opposition ("Opp.") at 4; Creager Decl. ¶ 8.) Defendant MPT claims that 11 of Plaintiff's California witnesses did not participate in the transactions giving rise to this lawsuit and are therefore irrelevant. (MPT Br. at 2.) However, only one of the 11 "irrelevant California witnesses" is on Plaintiff's list of those most knowledgeable.

Although witnesses reside in several geographic locations, a fair number of witnesses listed by both sides reside in California. Thus, this factor weighs against dismissal.

**b.     Forum's Convenience to the Litigants.**

With parties living on opposite sides of the Pacific Ocean, some inconvenience will inevitably result from litigation in either forum. Because Plaintiff lives in this forum and initiated the action here, this forum is presumably a convenient one for him. Plaintiff does not have business ties to Japan independent of his involvement with AMG. (Creager Decl., Ex A at 3.) Since September 2000, Plaintiff has made three trips to Japan, all related to AMG. (Creager Decl., Ex. A at 2-3.) He has not returned to Japan or conducted business relations in Japan since Yoshimoto terminated funding for AMG in March 2005. (Creager Decl., Ex. A at 2-3.)

Defendants, in contrast, maintain ongoing business ties to California. (Creager Decl., Ex. B at 15-16.) Yoshimoto has traveled to California nine times since January 1, 2004, including five

trips after the funding of AMG terminated in March 2005.  (Creager Decl., Ex. B at 15.)  M2M and

MPT's other primary executives have not visited California as frequently, or at all, during the same

time frame.  (*Id.*; Joint Br. at 3.)  However, MPT has a business relationship with a company in

Mountain View, California, and holds 75% interest in LogicLink, located in Irvine, California.  (*Id.*)

In addition, the Stock Purchase Agreement whereby MPT acquired control of LogicLink

included a provision that subjected the contract parties to "exclusive jurisdiction of the courts of the

State of California and the Federal Courts of the United States of America located in the State of

California." (Creager Decl., Ex. M at 22.)  Several of MPT's licensing agreements are also governed

by California law and/or give exclusive jurisdiction to California courts.  (*Id.* ¶ 11.)  Thus, MPT, by

doing business in California, has voluntarily accepted venue in the California courts on other

occasions.  As such, this factor weighs against dismissal.

### c.   Access to Physical Evidence and Other Sources of Proof.

The parties agree that this factor does not favor either forum.  (Creager Decl., Ex. A at 3;

Creager Decl., Ex. B at 15-16.)

### d.   Whether Unwilling Witnesses Can Be Compelled to Testify.

The parties agree that this factor does not favor either forum.  (Creager Decl., Ex. A at 3;

Creager Decl., Ex. B at 16.)

### e.   Cost of Bringing Witnesses to Trial.

With parties and witnesses scattered across three continents, trial in either forum will

inevitably result in considerable expense.  Therefore, this factor does not favor either forum.

### f.   Enforceability of the Judgment.

Plaintiff does not contend that either forum would offer greater enforceability.  (Creager

Decl., Ex. A at 4.)  Defendants disagree, and explain two potential issues regarding enforcement in

United States District Court

For the Northern District of California

Japan: (1) Japan does not recognize punitive damage awards; and (2) this Court must have jurisdiction over the Defendants under Japanese law for its judgment to be enforceable in Japan. (Creager Decl., Ex. B at 16.)

### i.      Punitive Damages

"A punitive damage award will not be recognized under Japanese law because such an award is considered inconsistent with 'Japanese public orders and good morals.'" (Joint Br. at 5 (citing Japanese Code of Civ. P. art. 118.))  The fact that the range of remedies available in Japan differs from that available in the United States, however, does not mean that mean that Japan would not provide an adequate alternative forum.  *See Creative Technology, Ltd. v. Aztech System Pte., Ltd.*, 61 F.3d 696, 701-02 (9th Cir. 1995) ("A court may dismiss on forum non conveniens grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum.").  Thus, fact that punitive damages are not available in Japan does not alter the Court's conclusion that Japan offers an adequate alternative forum.

Plaintiff seeks punitive damages only on the fraud cause of action, not on his other five causes of action.  (Complaint at 17.)  In addition to punitive damages, Plaintiff also seeks compensatory damages, restitution, litigation costs, and post-judgment interest.  (*Id.*)  Punitive damages aside, "U.S. judgments . . . generally are enforced in Japan."  Yasuhiro Fujita, *Enforcing Judgments in Japan*, Los Angeles Lawyer, Dec. 2004, at 22 (*available at* 27-DEC LALAW 19).  Japan has recognized California awards of compensatory damages, litigation costs, and post-judgment interest.  *Id.* at 21.  Because Plaintiff will likely be able to enforce a judgment from a United States' court in Japan, this factor does not favor dismissal.

### ii.      Jurisdiction Under Japanese Law

A party seeking to enforce a foreign judgment in Japan must demonstrate that the court

issuing the judgment had jurisdiction, as defined by Japanese law, over the defendant. (Creager Decl., Ex. B at 16.) "The [Japanese] jurisdiction requirement will be satisfied if the U.S. court rendering the judgment had reasonable contacts with the defendant or the underlying transaction." Yasuhiro Fujita, *Enforcing Judgments in Japan*, Los Angeles Lawyer, Dec. 2004, at 19. Japanese courts will typically uphold the United States court's jurisdiction if the judgment was issued in the state where the contract was performed or injury occurred. *Id.* Therefore, jurisdiction is likely satisfied because Plaintiff worked from San Francisco, thus performing at least part of the contract in this state.

However, to determine if this Court had the power to exercise jurisdiction over Defendants under Japanese law, Plaintiff may need to involve the Japanese courts. *Id.* at 22. This enforcement process will take at least two years at the Japanese district court level. *Id.* Given the uncertainty and time delay related to involving the Japanese courts, this factor weighs slightly in favor of dismissal.

g.     **Considerations Regarding Ease, Expeditiousness, and Expense of Trial.**

The parties present two practical considerations regarding the ease, expeditiousness, and expense of trial: (1) a simultaneous action in the Tokyo courts; and (2) the language barrier.

First, Defendants argue that Yoshimoto and MPT's pending action against Plaintiff in the Tokyo courts could lead to inefficiency and increased expense because the parties will need to argue the same issues in both fora. (Joint Br. at 5-6; MPT Br. at 3.) The Japanese court has recently denied Plaintiff's request for dismissal of the Tokyo case on lack of jurisdiction and/or forum non conveniens, and the trial is estimated to begin in September 2006. (Joint Br. at 5 n.2; MPT Br. at 3; MPT's Responsive Brief ("MPT Reply") at 2.)

The parties disagree regarding their ability to consolidate all claims into one action in either the United States or Japan in order to prevent fragmented litigation. Regarding consolidation in

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   Japan, Plaintiff contends that he cannot assert his claims as counterclaims in the Tokyo case because

2   his complaint names additional parties and reflects additional transactions. (Opp. at 9.) Defendants

3   believe that Plaintiff can file a separate action in Tokyo, which would likely be joined with the

4   existing Tokyo action. (MPT Br. at 3-4; Declaration of Mihoko Kawamizu ¶ 6.) Likewise,

5   regarding consolidation in the United States, Defendants claim that "Japan remains the only forum in

6   which the entire case can be tried." (Yoshimoto and M2M's Responsive Br. ("Joint Reply") at 7.)

7   Plaintiff believes that Defendants "could assert the claims in their Tokyo complaint as counterclaims

8   in this Court." (Opp. at 9.) While having the entire matter before a single forum would promote

9   efficiency and expeditiousness, it is unclear if that single forum could, or should, be the United

10  States or Japan. Therefore, this factor is in equipoise and does not favor either forum.

11          Second, Plaintiff argues the critical importance of language differences. (*Id.*) Plaintiff can

12  neither speak nor read Japanese. (*Id.* at 6.) He claims that because Defendants conducted their

13  business discussions in English, they exhibit a proficiency sufficient to understand the proceedings,

14  even if they provide their testimony through an interpreter. (*Id.* at 6, 9.) Defendants disagree,

15  claiming that "Asian business persons have no choice but to communicate with English-speakers in

16  English, the language of business," but "likely could not follow all of the testimony and understand

17  original documents in English." (MPT Reply at 4; Joint Reply at 5.) Regardless of the ability of

18  some of the Defendants to speak or understand English, this consideration does not favor either party

19  because an interpreter will likely be necessary in either forum to translate for the parties and

20  witnesses who do not speak the home language fluently.

21          Plaintiff also claims that virtually all of the relevant documents are written in English and

22  virtually all of the relevant business conversations, including emails, were conducted in English.

23  (Opp. at 9.) This Court and a California jury would be able to understand these documents without

24  9

translation, while a Japanese court would require translation.  This consideration does impact the ease of the trial, and therefore weighs against dismissal.

**2.      Public Interest Factors.**

**a.      Local Interest of the Lawsuit.**

Plaintiff is a resident of San Francisco and a United States citizen.  Because a forum state has an enhanced interest when the case involves the injury of its own citizen, California has a strong interest in providing a forum for Plaintiff.  *See Brand v. Menlove Dodge*, 796 F.2d 1070, 1076 (9th Cir. 1986); *Hedrick v. Daiko Shoji Co., Ltd., Osaka*, 715 F.2d 1355, 1359 (9th Cir. 1983).

The parties agree that Japan also has an interest in adjudicating a dispute against its citizens and corporate identities.  (Joint Br. at 6; Opp. at 11.)  "However, with this interest factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Tauzon*, 433 F.3d at 1182.  Because this forum has an identifiable local interest in the case, this factor favors retention.

**b.      Court's Familiarity with the Governing Law.**

It is unclear whether California, Japanese, or even Australian law might govern this contract dispute.  The applicable law is determined by performing "choice of law analysis under California's 'governmental interest' approach."  *Dole*, 303 F.3d at 1119 (citation omitted).  Under the governmental interest approach, in the event of a conflict between Japanese and California law, "the law of the sovereign with the greater interest in having its law applied controls."  *Id.*

At this time, a choice of law determination need not be made because this case does not involve a statute mandating venue in a United States district court. *See Leetsch v. Freedman*, 260 F.3d 1100, 1103 n.1 (9th Cir. 2001) ("The district court was not required to make a choice of law determination [in its forum non conveniens analysis], because this case did not involve a statute

10

requiring venue in the United States."). Undoubtedly, this case will require a choice of law analysis, but this complicated determination will occur regardless of the forum. Therefore, this factor does not favor either forum.

### c.  Burden on Local Courts and Juries.

Plaintiff argues that this "comparatively simple business dispute" would "not add appreciably to the burden of either court," but would present a greater burden in Tokyo because of the need to translate the documents and testimony. (Opp. at 12.) Defendants argue that conducting the trial in Tokyo would be less burdensome because: (1) there is a possibility that this case could be consolidated with the present Tokyo action; and (2) the dispute would not be tried before a jury in Tokyo. (Joint Br. at 7-9; MPT Br. at 7.) The possible consolidation of the separate actions is addressed above.

Regarding the judge/jury distinction, trial in Japan would not involve a jury, and therefore would not require the associated expenses. While the use of a jury involves expense, the Court disagrees with MPT's assertion that "the expense of the jury . . . is not warranted given the lack of a significant connection between this dispute and San Francisco." (MPT Br. at 7.) As already discussed, this forum has an interest in this dispute, and as discussed in the Court's previous order, this dispute relates to this forum. (Order Denying Defendant Yoshimoto's Motion to Dismiss for Lack of Personal Jurisdiction ("Jurisdiction Order") at 7.) Even without a jury in Tokyo, presentation to a judge in Tokyo would still require translation of the documents, while presentation to a United States jury would not.

The challenges of this case create a different type of burden in each location. The burden, however, does not appear to be insurmountable or significantly different in scope in either location. Therefore, this factor does not favor either forum.

11

**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       d.      **Court Congestion.**

Regarding court congestion, "[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet*, 743 F.2d at 1337. Neither side contends that Tokyo has a less crowded docket, therefore, this factor does not favor dismissal.

       e.      **Costs of Resolving a Dispute Unrelated to this Forum.**

This Court previously determined that Plaintiff's claims relate to this forum. *See* Jurisdiction Order at 7. Therefore, this factor favors retention.

      **3.**      **Balancing the Public and Private Interest Factors.**

In a motion to dismiss for forum non conveniens, the defendant bears a heavy burden to prove that "the 'private interest' and 'public interest' factors *strongly* favor trial in the foreign country." *Dole,* 303 F.3d at 1118 (citations omitted) (emphasis added). Here, several of the factors do not favor either forum, but those that do, favor retention in this forum. Accordingly, Defendants have not carried their heavy burden to demonstrate that the balancing of factors strongly favors dismissal for trial in Japan or elsewhere. As such, Plaintiff's choice of forum will not be disturbed and this Court will retain jurisdiction.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss for forum non conveniens.

**IT IS SO ORDERED.**

Dated: March 14, 2006

                                  _____
                                    JEFFREY S. WHITE
                                    UNITED STATES DISTRICT JUDGE