1  MARK L. MOSLEY (SBN 136449)
   BRIAN GEARINGER (SBN 146125)
2  MOSLEY & GEARINGER LLP
   825 Van Ness Avenue, Fourth Floor
3  San Francisco, California 94109-7837
   Telephone:    (415) 440-3102
4  Facsimile:     (415) 440-3103
5
   Attorneys for Defendants
6  MASUO YOSHIMOTO and M2M, Inc.

7
                    UNITED STATES DISTRICT COURT
8
                   NORTHERN DISTRICT OF CALIFORNIA
9

10  ROBERT R. CREAGER,                      Case No. C 05-01985 JSW

11              Plaintiff,                  **DEFENDANTS MASUO YOSHIMOTO**
                                            **AND M2M, INC.'S ANSWER TO**
12        vs.                               **COMPLAINT OF PLAINTIFF**
                                            **ROBERT R. CREAGER, COUNTER-**
13  MASUO YOSHIMOTO, an individual,  M.P.   **CLAIMS AGAINST PLAINTIFF**
    TECHNOLOGIES, INC., a corporation, and  **ROBERT R. CREAGER AND**
14  M2M, INC., a corporation,               **DEMAND FOR JURY TRIAL**
                                            [F.R.C.P. 7, 8, 13 and 38]
15              Defendants.

16

17
          Defendants Masuo Yoshimoto ("Yoshimoto") and M2M, Inc. ("M2M") (collectively
18
    "Defendants"), respond to the Complaint of Plaintiff Robert R. Creager ("Plaintiff") and assert
19
    counter-claims as follows:
20
          1.      Responding to paragraph 1, Defendants admit that Yoshimoto had contact with
21
    Plaintiff starting in 2004 regarding various potential business opportunities.  As to the remainder
22
    of paragraph 1, Defendants deny the allegations set forth therein.
23
          2.      Responding to paragraph 2, Defendants admit that Yoshimoto is the founder and
24
    CEO of M.P. Technologies, Inc. ("MPT").  Defendants further admit that MPT was in the
25
    business of providing Internet protocol video-on-demand services to hospitality customers in
26
    Japan, and Defendants admit that Yoshimoto wanted to grow MPT into a leading international
27
    provider of Internet protocol video-on-demand services to the hospitality sector and already was
28

DEFENDANTS' ANSWER TO COMPLAINT, COUNTERCLAIM    1    U.S. DISTRICT COURT CASE NO. C05-1985 JSW
AND DEMAND FOR JURY TRIAL

1    seeking expansion into China.  As to the remainder of paragraph 2, Defendants deny the

2    allegations set forth therein.

3        3.      Responding to paragraph 3, Defendants admit that M2M initially funded AMG

4    MediaVision Inc. ("AMG") with approximately $500,000.  As to the remainder of paragraph 3,

5    Defendants deny the allegations set forth therein.

6        4.      Responding to paragraph 4, Defendants deny that Plaintiff was diligent or

7    successful in work on behalf of MPT, deny that Plaintiff brought about strategic global

8    acquisitions useful to MPT, deny that Plaintiff managed MPT's acquisition of three enterprises,

9    deny that Plaintiff greatly expanded MPT's share of the international market in hospitality

10   customer IP services, and denies that MPT has benefited tremendously from Plaintiff's services,

11   contacts, and expertise.  As to the remainder of paragraph 4, Defendants lack sufficient

12   knowledge or information to form a belief as to the truth of these allegations, and on that basis

13   denies them.

14       5.      Responding to paragraph 5, Defendants admit that Yoshimoto did not sign certain

15   documents relating to AMG.  As to the remainder of paragraph 5, Defendants deny the

16   allegations set forth therein.

17       6.      Responding to paragraph 6, Defendants deny the allegations set forth therein.

18       7.      Responding to paragraph 7, Defendants admit the allegations set forth therein.

19       8.      Responding to paragraph 8, Defendants deny the allegations set forth therein.

20       9.      Responding to paragraph 9, Defendants admit that venue is proper in this judicial

21   district pursuant to 28 U.S.C. § 1391(d).  As to the remainder of paragraph 9, Defendants deny

22   the allegations set forth therein.

23       10.     Responding to paragraph 10, Defendants admit the allegations set forth therein.

24       11.     Responding to paragraph 11, Defendants admit that Plaintiff is a resident of San

25   Francisco, California, that AMG was incorporated in Delaware, that Plaintiff sometimes

26   conducted business on behalf of AMG from his house in San Francisco, California and that

27   AMG ceased operations in March 2005.  Defendants further admit that Yoshimoto did not sign

28

DEFENDANTS' ANSWER TO COMPLAINT, COUNTERCLAIM     2     U.S. DISTRICT COURT CASE NO. C05-01985 JSW
AND DEMAND FOR JURY TRIAL

1  certain documents relating to AMG.  As to the remainder of paragraph 11, Defendants deny the

2  allegations set forth therein.

3        12.     Responding to paragraph 12, Defendants deny that Yoshimoto is MPT's largest

4  single shareholder and admit that Yoshimoto held approximately 25% of MPT's outstanding

5  shares in May 2005.  As to the remainder of paragraph 12, Defendants admit the allegations set

6  forth therein.

7        13.     Responding to paragraph 13, Defendants deny that denies that MPT concluded

8  acquisitions of companies as a result of Plaintiff's efforts, and deny that MPT has extended its

9  customer base as alleged in paragraph 13 except insofar as MPT acquired a controlling interest in

10  the companies with customers in the regions alleged in paragraph 13.  As to the remainder of

11  paragraph 13, Defendants admit the allegations set forth therein.

12        14.     Responding to paragraph 14, Defendants admit that M2M initially funded AMG

13  with approximately $500,000, admit that M2M is a *Yugen-kaisya* company, a type of limited

14  liability company under the laws of Japan, admit that M2M serves as an investment vehicle, and

15  admit that M2M is owned wholly by Yoshimoto and his daughter and his son.  As to the

16  remainder of paragraph 14, Defendants deny the allegations set forth therein.

17        15.     Responding to paragraph 15, Defendants admit that M2M initially funded AMG

18  with approximately $500,000, admit that M2M provided some additional funds related to AMG,

19  admit that M2M is a *Yugen-kaisya* company, a type of limited liability company under the laws

20  of Japan, admit that M2M serves as an investment vehicle, and admit that M2M is owned wholly

21  by Yoshimoto and his daughter and his son.  As to the remainder of paragraph 15, Defendants

22  deny the allegations set forth therein.

23        16.     Responding to paragraph 16, Defendants deny the allegations as they pertain to

24  Defendants.  As to the remainder of paragraph 16, Defendants lack sufficient knowledge or

25  information to form a belief as to the truth of these allegations, and on that basis denies them.

26  / / /

27  / / /

28  DEFENDANTS' ANSWER TO COMPLAINT, COUNTERCLAIM    3     U.S. DISTRICT COURT CASE NO. C05-01985 JSW
AND DEMAND FOR JURY TRIAL

17.     Responding to paragraph 17, Defendants denies the allegations as they pertain to Defendants.  As to the remainder of paragraph 17, Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations, and on that basis denies them.

18.     Responding to paragraph 18, Defendants admit that Plaintiff was the founder of a MagiNet entity although Defendants are uncertain as to what the exact name of the entity was. Defendants further admit that Plaintiff was the CEO of a MagiNet entity through the 1990s, and admit that MagiNet Pte Ltd. ("MagiNet") is the largest company in its industry in the Asia-Pacific region and is now headquartered in Singapore.  As to the remainder of paragraph 18, Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations, and on that basis denies them.

19.     Responding to Paragraph 19, Defendants admit that Yoshimoto and Plaintiff met in Tokyo, admit that MPT had an initial public offering of stock, admit that Yoshimoto "sought to meet with [Plaintiff] and solicit his ideas for [MPT's] growth, and admit that Plaintiff "advised Yoshimoto that a strategy of acquisitions would be the most effective means for expanding MPT in the near term, given the access to large amounts of capital that MPT's market cap made possible" and admit that that MPT's revenues were approximately $10 million.  Defendants deny that the offering took place in February 2004, Defendants deny that Yoshimoto "wanted to expand MPT rapidly by making use of its high market capitalization in order to help justify the high market capitalization", and Defendants deny that MPT's new market capitalization valued MPT at $500 million.  As to the remainder of paragraph 19, Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations, and on that basis denies them.

20.     Responding to Paragraph 20, Defendants deny the allegations set forth therein.

21.     Responding to Paragraph 21, Defendants deny the allegations set forth therein.

22.     Responding to Paragraph 22, Defendants admit that Yoshimoto and Plaintiff met in Melbourne, Australia in July 2004.  As to the remainder of paragraph 22, Defendants deny the allegations set forth therein.

23.      Responding to Paragraph 23, Defendants deny that the referenced Memorandum of Understanding was a binding agreement.  Defendants admit that Exhibit A to Plaintiff's Complaint contains the language quoted in this paragraph.  Defendants further admit that Exhibit A to Plaintiff's Complaint contains the following language in Paragraph 5:  "The intention is that each company acquired will eventually make an IPO in its local stock market when conditions are appropriate."

24.      Responding to Paragraph 24, Defendants deny that the referenced Memorandum of Understanding was a binding agreement.  Defendants admit that Exhibit A to Plaintiff's Complaint contains the language quoted in this paragraph.

25.      Responding to Paragraph 25, Defendants deny that the referenced Memorandum of Understanding was a binding agreement.  Defendants admit that Exhibit A to Plaintiff's Complaint contains the language quoted in this paragraph.

26.      Responding to Paragraph 26, Defendants deny that the referenced Memorandum of Understanding was a binding agreement.  Defendants admit that Exhibit A to Plaintiff's Complaint contemplates an employment agreement containing the terms set forth in this paragraph.

27.      Responding to Paragraph 27, Defendants deny that the referenced Memorandum of Understanding was a binding agreement.  Defendants admit that Exhibit A to Plaintiff's Complaint contains the language quoted in this paragraph.

28.      Responding to Paragraph 28, Defendants deny that the referenced Memorandum of Understanding was a binding agreement.  Defendants further deny that Exhibit A called for AMG to receive a "cash injection" from MPT.  Defendants further deny that Exhibit A required that "AMG was to receive $500,000 in start-up funding from M2M by the end of August 2004." Defendants admit that M2M initially funded AMG with approximately $500,000.

29.      Responding to Paragraph 29, Defendants admit that M2M initially funded AMG with approximately $500,000 in August 2004.

/ / /

30.     Responding to Paragraph 30, Defendants deny that the referenced Memorandum of Understanding was a binding agreement.  Defendants admit that Exhibit A to Plaintiff's Complaint contains the language quoted in this paragraph.  As to the remainder of paragraph 30, Defendants admit that in August 2004, AMG had two employees consisting of Plaintiff and Plaintiff's personal partner Mika Saito who lived with him at his house in San Francisco, California, Defendants admit that "initial employees will work from their homes and new employees will not be added until absolutely necessary" and Defendants admit that AMG hired Hilmi Ortadeveci sometime later.

31.     Responding to Paragraph 31, Defendants admit that Yoshimoto met with Guest-Tek in August, 2004, that MPT directors were pleased with the description of Guest-Tek, and that MPT purchased enough Guest-Tek stock to become the majority shareholder and helped elect Guest-Tek's founder and others to Guest-Tek's board.  As to the remainder of paragraph 31, Defendants deny the allegations set forth therein.

32.     Responding to Paragraph 32, Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations, and on that basis denies them.

33.     Responding to Paragraph 33, Defendants admit that Yoshimoto sent an email to Plaintiff on or about September 28, 2004, and Defendants admit that the full sentence containing the quoted language reads:  "But in order to get incentive for finding [sic], MPT agree [sic] to give you and your staff warrant (Stock option) of target acquired company's stock as we discussed at IBC."  As to the remainder of paragraph 31, Defendants deny the allegations set forth therein.

34.     Responding to Paragraph 34, Defendants admit that Plaintiff introduced Yoshimoto to MagiNet CEO N.Y. Lee, Defendants admit that Plaintiff took "trips to Thailand and Tokyo where he met with Yoshimoto" and Defendants admit that "[t]he value of LogicLink at the time of MPT's acquisition of it was $10 million; the value of MagiNet, $110 million."  As to the remainder of paragraph 34, Defendants deny the allegations set forth therein.

35.     Responding to Paragraph 35, Defendants deny the allegations set forth therein

36.     Responding to Paragraph 36, Defendants admit that Yoshimoto never provided any funding for AMG.   As to the remainder of paragraph 36, Defendants deny the allegations set forth therein.

37.     Responding to Paragraph 37, Defendants admit that Yoshimoto sent Plaintiff an email on March 2, 2005, but Defendants denies that the March 2, 2005 email contains that language quoted in this paragraph.  Defendants further deny that any percentages and stock options were owed to Plaintiff.  Defendants admit that the March 2, 2005 email did not refer to the referenced Memorandum of Understanding and stated "M2M can not afford further AMG funding" and Defendants admit that Plaintiff contacted Yoshimoto regarding further funding of AMG.  As to the remainder of paragraph 37, Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations, and on that basis denies them.

38.     Responding to Paragraph 38, Defendants admit that Yoshimoto requested that Plaintiff resign from the board of directors of Guest-Tek, and Defendants admit that Plaintiff advised Yoshimoto that AMG's engineer "had a new baby to support".  As to the remainder of paragraph 38, Defendants deny the allegations set forth therein.

39.     Responding to Paragraph 39, Defendants admit that Yoshimoto signed the referenced Memorandum of Understanding, and Defendants admit that Yoshimoto did not sign certain documents relating to AMG and did not sign an employment agreement for Plaintiff, and Defendants admit that that M2M paid off certain expenses of AMG.  As to the remainder of paragraph 39, Defendants deny the allegations set forth therein.

40.     Responding to Paragraph 40, Defendants incorporate and allege each of the preceding paragraphs as though fully set forth herein.

41.     Responding to Paragraph 41, Defendants admit that Yoshimoto signed Exhibit A in Melbourne, Australia in July 2004.  Defendants deny that the referenced Memorandum of Understanding was a binding agreement.  Defendants incorporate and allege each of its responses in the preceding paragraphs as though fully set forth herein to Plaintiff's allegations regarding "key provisions" of the referenced Memorandum of Understanding

42.     Responding to Paragraph 42, Defendants deny the allegations set forth therein

43.     Responding to Paragraph 43, Defendants admit that MPT never funded AMG, Defendants admit that Yoshimoto did not sign certain documents relating to AMG and Defendants admit that Defendants did not provide Plaintiff with an employment contract. Defendants deny that the referenced Memorandum of Understanding was a binding agreement. As to the remainder of paragraph 43, Defendants deny the allegations set forth therein.

44.     Responding to Paragraph 44, Defendants deny the allegations set forth therein.

45.     Responding to Paragraph 45, Defendants incorporate and allege each of the preceding paragraphs as though fully set forth herein.

46.     Responding to Paragraph 46, Defendants deny that the referenced Memorandum of Understanding was a binding agreement.  As to the remainder of paragraph 46, Defendants deny the allegations set forth therein.

47.     Responding to Paragraph 47, Defendants deny the allegations set forth therein.

48.     Responding to Paragraph 48, Defendants deny that the referenced Memorandum of Understanding was a binding agreement.  As to the remainder of paragraph 48, Defendants deny the allegations set forth therein.

49.     Responding to Paragraph 49, Defendants deny the allegations set forth therein.

50.     Responding to Paragraph 50, Defendants deny the allegations set forth therein.

51.     Responding to Paragraph 51, Defendants deny the allegations set forth therein.

52.     Responding to Paragraph 52, Defendants deny the allegations set forth therein.

53.     Responding to Paragraph 53, Defendants admit that Yoshimoto was the Chief Executive Officer of MPT, but Defendants deny that Yoshimoto was acting on behalf of MPT while Yoshimoto was interacting with Plaintiff.  As to the remainder of paragraph 53, Defendants deny the allegations set forth therein.

54.     Responding to Paragraph 54, Defendants admit that Yoshimoto signed Exhibit A in Melbourne, Australia in July 2004.  Defendants deny that the referenced Memorandum of

Understanding was a binding agreement.  As to the remainder of paragraph 54, Defendants deny the allegations set forth therein.

55.     Responding to Paragraph 55, Defendants admit that Yoshimoto sent an e-mail to Plaintiff on or about September 28, 2004, and Defendants admit that the full sentence containing the quoted language reads:  "But in order to get incentive for finding, MPT agree to give you and your staff warrant (stock option) of target acquired company's stock as we discussed at IBC."  Defendants deny that the e-mail "reaffirmed" the allegations of paragraph 54, and Defendants deny that the September 28, 2004 e-mail specifically states the remaining allegations of this paragraph.

56.     Responding to Paragraph 56, Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations, and on that basis denies them.

57.     Responding to Paragraph 57, Defendants admit that Yoshimoto "did not sign the corporate documents that (pursuant to the MOU) Plaintiff caused to be prepared to relating to the formation of AMG."  Defendants deny that the referenced Memorandum of Understanding was a binding agreement.  As to the remainder of paragraph 57, Defendants deny the allegations set forth therein.

58.     Responding to Paragraph 58, Defendants deny the allegations set forth therein.

59.     Responding to Paragraph 59, Defendants deny the allegations set forth therein.

60.     Responding to Paragraph 60, Defendants deny the allegations set forth therein.

61.     Responding to Paragraph 61, Defendants deny the allegations set forth therein.

62.     Responding to Paragraph 62, Defendants incorporate and allege each of the preceding paragraphs as though fully set forth herein.

63.     Responding to Paragraph 63, Defendants deny the allegations set forth therein.

64.     Responding to Paragraph 64, Defendants deny the allegations set forth therein.

65.     Responding to Paragraph 65, Defendants deny the allegations set forth therein.

66.     Responding to Paragraph 66, Defendants deny the allegations set forth therein.

/ / /

67.     Responding to Paragraph 67, Defendants incorporate and allege each of the preceding paragraphs as though fully set forth herein.

68.     Responding to Paragraph 68, Defendants deny the allegations set forth therein.

69.     Responding to Paragraph 69, Defendants deny the allegations set forth therein.

70.     Responding to Paragraph 70, Defendants deny the allegations set forth therein.

71.     Responding to Paragraph 71, Defendants incorporate and allege each of the preceding paragraphs as though fully set forth herein.

72.     Responding to Paragraph 72, Defendants deny the allegations set forth therein.

## AFFIRMATIVE DEFENSES

73.     Defendants allege as follows regarding its affirmative defenses to Plaintiff's Complaint:

### First Affirmative Defense

74.     This Court lacks personal jurisdiction over Defendants.

### Second Affirmative Defense

75.     Under principles of *res judicata*, a separate action pending in the courts of Japan has and/or will result in final judgment on the merits of disputed claims and issues in this case, against Plaintiff and in favor of Defendants, so as to require judgment in this action in favor of Defendants.

### Third Affirmative Defense

76.     Under principles of *forum non conveniens*, the District Court of Tokyo, Japan is the more convenient forum for resolution of the claims in Plaintiff's Complaint, and therefore Plaintiff's Complaint should be dismissed.

### Fourth Affirmative Defense

77.     Plaintiff and Defendants reached an accord and satisfaction of Plaintiff's claims set forth in Plaintiff's Complaint, and therefore Plaintiff is barred from any recovery on the complaint, and each of the claims alleged therein, and based upon the accord and satisfaction, Plaintiff's Complaint should be dismissed.

**Fifth Affirmative Defense**

78.     Plaintiff lacks standing to assert the claims set forth in Plaintiff's Complaint, and therefore Plaintiff's Complaint, and each claim alleged therein, should be dismissed.

**Sixth Affirmative Defense**

79.     Each contract alleged in Plaintiff's Complaint to which Defendants were a party, if any, fails for lack of consideration or inadequate consideration, and therefore is void, illusory and unenforceable.

**Seventh Affirmative Defense**

80.     Each contract alleged in Plaintiff's Complaint to which Defendants were a party, if any, was premised on a mutual mistake of fact, and therefore Plaintiff is barred from any recovery against Defendants.

**Eighth Affirmative Defense**

81.     Each contract alleged in Plaintiff's Complaint to which Defendants were a party, if any, was premised on one or more material misrepresentations or nondisclosures by Plaintiff, tantamount to fraudulent inducement.  Therefore, each such alleged contract should be set aside, and Plaintiff is barred from any recovery against Defendants.

**Ninth Affirmative Defense**

82.     Each contract alleged in Plaintiff's Complaint to which Defendants were a party, if any, was modified and/or the subject of a novation, and under the terms of such modification or novation Plaintiff is barred from any recovery against Defendants.

**Tenth Affirmative Defense**

83.     Each contract alleged in Plaintiff's Complaint to which Defendants were a party, if any, violates the requirement of the Statute of Frauds that there must be a writing, and therefore each such alleged contract is void, illusory and unenforceable as against Defendants.

/ / /

/ / /

/ / /

**Eleventh Affirmative Defense**

84.     Each contract alleged in Plaintiff's Complaint to which Defendants were a party, if any, fails because Defendants lacked the capacity to enter into each such alleged contract, and therefore each such alleged contract is void, illusory and unenforceable.

**Twelfth Affirmative Defense**

85.     Plaintiff has failed to mitigate his damages.  Therefore, Plaintiff's recovery, if any, must be reduced to the extent of such failure to mitigate.

**Thirteenth Affirmative Defense**

86.     Plaintiff has, by his actions, waived his right to pursue Plaintiff's Complaint, and each of the claims alleged therein.

**Fourteenth Affirmative Defense**

87.     Plaintiff is estopped from asserting Plaintiff's Complaint, and each of the claims alleged therein, due to his own wrongful and unjustified actions.

**Fifteenth Affirmative Defense**

88.     Plaintiff's equitable claims are barred under the doctrine of unclean hands.

**Sixteenth Affirmative Defense**

89.     Plaintiff's Complaint and each claim alleged therein is barred by the applicable statutes of limitation.

**Seventeenth Affirmative Defense**

90.     Plaintiff's claims are barred by the doctrine of laches, as Plaintiff unreasonably delayed in bringing the claims alleged in Plaintiff's Complaint with full knowledge of the facts and circumstances allegedly supporting those claims, to the detriment and prejudice of Defendants.

# COUNTER-CLAIMS

## I.     FACTUAL ALLEGATIONS

91.     On July 11, 2004, Yoshimoto and Plaintiff met in Melbourne, Australia to discuss potential business opportunities.  Plaintiff, a licensed California attorney since 1971, does not

speak Japanese.  Yoshimoto, a Japanese citizen, conducts business discussions with non-Japanese speakers in English, albeit with difficulty as he is not fluent in English.

92.     Plaintiff brought to the meeting a document that he prepared entitled "Memorandum of Understanding."  After a brief discussion between Plaintiff and Yoshimoto, Plaintiff revised the Memorandum of Understanding, and Plaintiff and Yoshimoto signed it.  The executed version of the Memorandum of Understanding is attached to Plaintiff's Complaint as Exhibit A.

93.     Yoshimoto understood that the Memorandum of Understanding was "an agreement to agree"; that is, that the Memorandum of Understanding reflected the framework of a potential future contract between Yoshimoto, Plaintiff and MPT and that the Memorandum of Understanding simply functioned as the minutes of the meeting.  Yoshimoto's understanding was based upon Japanese law, practice and custom for creating and entering into a memorandum of understanding.  Yoshimoto's understanding further was based on the fact that MPT is a publicly traded company and, as such, Yoshimoto did not have the authority to bind MPT.  Instead, MPT only could act through its board of directors.

## II.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF – BREACH OF ORAL CONTRACT

94.     Defendants incorporate by reference each of the preceding paragraphs as though fully set forth herein, and further allege as follows:

95.     Sometime after July 11, 2004, Plaintiff and Yoshimoto entered into an oral contract in which Yoshimoto agreed initially to fund AMG through M2M with approximately $500,000.  The nature of the business of AMG was (1) to develop clients of video-on-demand services provided by MPT; and (2) to assist Defendants in developing business opportunities in North America.  Plaintiff was to receive a salary of $25,000 per month and an initial stock grant of five percent of the stock of AMG, and serve as the Chief Executive Officer of AMG.

/ / /

/ / /

96.     Defendants have performed all conditions, covenants and promises required to be performed on their part in accordance with the terms and conditions of the oral contract, including the initial funding of AMG with approximately $500,000.

97.     Beginning in December 2004, Plaintiff breached the oral contract by converting assets of AMG to his own use, those assets consisted of a finder's fee of approximately $1,062,750 relating to MPT's purchase of shares from certain shareholders of MagiNet.

98.     As a proximate result of Plaintiff's breach of the oral contract, Defendants suffered damages in the amount of approximately $1,062,750 in that this sum went to Plaintiff rather than AMG.

WHEREFORE, Defendants pray for relief as set forth below.

## SECOND CLAIM FOR RELIEF – BREACH OF FIDUCIARY DUTY

99.     Defendants incorporate by reference each of the preceding paragraphs as though fully set forth herein, and further allege as follows:

100.     By entering into the oral contract, Plaintiff agreed to act as the agent of AMG and Defendants.

101.     By intentionally converting assets of AMG to his own use, specifically, by taking a secret profit in the form of a finder's fee of approximately $1,062,750 relating to MPT's purchase of shares from certain shareholders of MagiNet, Plaintiff breached his fiduciary duty of care to AMG and Defendants.

102.     As a proximate result of Plaintiff's breach of his fiduciary duty of care to AMG and Defendants, Defendants suffered damages in the amount of approximately $1,062,750 in that this sum went to Plaintiff rather than AMG.

WHEREFORE, Defendants pray for relief as set forth below.

## THIRD CLAIM FOR RELIEF – CONVERSION

103.     Defendants incorporate by reference each of the preceding paragraphs as though fully set forth herein, and further allege as follows:

/ / /

104.   By intentionally converting assets of AMG to his own use, Plaintiff breached his fiduciary duty of care to AMG and Defendants.

105.   At all relevant times mentioned herein, Defendants owned 95 percent of AMG, and AMG was entitled to the benefits of Plaintiff's performance of his duties and obligations as the Chief Executive Officer of AMG, pursuant to the oral contract.

106.   In May 2005, Plaintiff received the finder's fee of approximately $1,062,750 relating to MPT's purchase of shares from certain shareholders of MagiNet.

107.   As a proximate result of Plaintiff's conversion of approximately $1,062,750, Defendants suffered damages in the amount of approximately $1,062,750 in that this sum went to Plaintiff rather than AMG.

WHEREFORE, Defendants pray for relief as set forth below.

FOURTH CLAIM FOR RELIEF – ACTUAL FRAUD

108.   Defendants incorporate by reference each of the preceding paragraphs as though fully set forth herein, and further allege as follows:

109.   By entering into the oral contract or about July 11, 2004, Plaintiff expressly and impliedly agreed to perform his duties and obligations as the Chief Executive Officer of AMG to the best of his abilities.

110.   Defendants are informed and believe and based upon such information and belief allege that at the time Plaintiff expressly and impliedly agreed to perform his duties and obligations as the Chief Executive Officer of AMG to the best of his abilities, Plaintiff had no intention of performing his agreement.

111.   Defendants are informed and believe and based upon such information and belief allege that Plaintiff's agreement was made to induce Defendants to fund AMG through M2M with approximately $500,000 and pay a salary and benefits to Plaintiff and, at the same time, Plaintiff intended to gain profits and benefits for himself rather than AMG.

112.   Defendants, at the time that Plaintiff expressly and impliedly agreed to perform his duties and obligations as the Chief Executive Officer of AMG to the best of his abilities and

at the time Plaintiff began taking steps to obtain the finder's fee of approximately $1,062,750 relating to MPT's purchase of shares from certain shareholders of MagiNet, were ignorant of Plaintiff's secret intention to gain profits and benefits for himself rather than AMG and could not, in the exercise of reasonable diligence, have discovered Plaintiff's secret intention.  In reliance on Plaintiff's agreement to perform his duties and obligations as the Chief Executive Officer of AMG to the best of his abilities, Defendants contributed approximately $500,000 to fund AMG and an initial stock grant of five percent of the stock of AMG to Plaintiff.  If Defendants had known of Plaintiff's actual intentions, Defendants' would not have taken such actions.

113.    By intentionally converting assets of AMG to his own use, Plaintiff breached his fiduciary duty of care to AMG and Defendants.

114.    As a proximate result of Plaintiff's fraud and the facts alleged above, Defendants were induced to, and did contribute approximately $500,000 to fund AMG and granted an initial stock grant of five percent of the stock of AMG to Plaintiff, and Plaintiff received the finder's fee of approximately $1,062,750, by reason of which Defendants have been damaged in the sum of approximately $1,562,750.

115.    The conduct of Plaintiff as alleged above constituted intentional misrepresentation, deceit and/or concealment of a material fact known to Plaintiff with the intention on Plaintiff's part of depriving Defendants of legal rights and otherwise causing them injury, and was wrongful conduct that subjected Defendants' to unjust hardship in conscious disregard of Defendants' rights, so as to justify an award of exemplary as well as compensatory damages.

WHEREFORE, Defendants pray for relief as set forth below.

### FIFTH CLAIM FOR RELIEF – CONSTRUCTIVE FRAUD

116.    Defendants incorporate by reference each of the preceding paragraphs as though fully set forth herein, and further allege as follows:

117.    By virtue of Plaintiff's agreement to perform his duties and obligations as the Chief Executive Officer of AMG to the best of his abilities, the relationship between Plaintiff

and Defendants was fiduciary in nature.  As a result, Plaintiff owed Defendants the fiduciary duties of loyalty and care, and the obligation to conduct the partnership business in good faith and fair dealing.  Because Defendant's confidence in Plaintiff's integrity caused Defendants to entrust Plaintiff with authority to act for AMG, a confidential relationship existed at all relevant times between Plaintiff and Defendants.

118.   Plaintiff breached his fiduciary duties to Defendants and violated the relationship of trust and confidence by excluding Defendants from the benefits of Plaintiff's performance of his duties and obligations as the Chief Executive Officer of AMG, and by securing an advantage over Defendants by misleading Defendants to their prejudice.

119.   Defendants placed confidence in and relied on Plaintiff until on or about May 2005, when Defendants discovered Plaintiff's acts committed in breach of his fiduciary duties. Until that date, Defendants had reasonably relied on Plaintiff in view of their relationship under the oral contract.

120.   As a proximate result of Plaintiff's fraud and the facts alleged above, Defendants were induced to, and did contribute approximately $500,000 to fund AMG and granted an initial stock grant of five percent of the stock of AMG to Plaintiff, and Plaintiff received the finder's fee of approximately $1,062,750, by reason of which Defendants have been damaged in the sum of approximately $1,562,750.

WHEREFORE, Defendants pray for relief as set forth below.

<u>SIXTH CLAIM FOR RELIEF – ACCOUNTING</u>

121.   Defendants incorporate by reference each of the preceding paragraphs as though fully set forth herein, and further allege as follows:

122.   On or about August 2004, Plaintiff assumed sole possession and control of AMG, specifically Defendants' initial funding of AMG with approximately $500,000.  Thereafter, Plaintiff controlled the above sum to the exclusion of Defendants and without making any accounting to Defendants of the income or disbursements, or the net profits and losses realized

by AMG. Plaintiff's conduct in failing to provide an accounting was wrongful, in that it was a breach of Plaintiff's fiduciary duties of loyalty and care to Defendants.

123. AMG never has been dissolved and no accounting has been made of AMG to Defendants. Defendants have made demands on Plaintiff for an accounting; however, Plaintiff has failed, refused and neglected to make an accounting and continues to fail, refuse and neglect to do so.

WHEREFORE, Defendants pray for relief as set forth below.

### SEVENTH CLAIM FOR RELIEF – ACCOUNTING

124. Defendants incorporate by reference each of the preceding paragraphs as though fully set forth herein, and further allege as follows:

125. An actual controversy has arisen, and now exists, between Defendants and Plaintiff concerning their respective rights and duties in that Defendants maintain that they are entitled to an accounting of the income or disbursements, or the net profits and losses realized by AMG, and Plaintiff maintains that he is not required to provide Defendants with an accounting

126. Defendants desire a judicial determination of their rights and duties, and a declaration as the Defendants' right to an accounting and Defendants' rights to the disposition of any remaining assets of AMG.

127. A judicial declaration is necessary and appropriate at this time under the circumstances in that Defendants may ascertain their rights with respect to AMG.

WHEREFORE, Defendants pray for relief as set forth below.

### EIGHTH CLAIM FOR RELIEF – UNFAIR COMPETITION

128. Defendants incorporate by reference each of the preceding paragraphs as though fully set forth herein, and further allege as follows:

129. By his wrongful conduct as set forth above, Plaintiff has engaged in an unlawful business act or unlawful business practice in violation of the common law prohibitions against unfair competition and California Business and Professions Code section 17200 *et seq*.

/ / /

130.    By his wrongful conduct as set forth above, Plaintiff has engaged in an unfair business act or unfair business practice in violation of the common law prohibitions against unfair competition and California Business and Professions Code section 17200 *et seq*.

131.    By his wrongful conduct as set forth above, Plaintiff has engaged in a deceptive business act or deceptive business practice in violation of the common law prohibitions against unfair competition and California Business and Professions Code section 17200 *et seq*.

132.    Pursuant to the common law and California Business and Professions Code section 17200 *et seq*, Defendants seek restitution of amounts wrongfully retained by Plaintiff as a result of his unfair, unlawful and/or deceptive business acts and/or business practices.

WHEREFORE, Defendants pray for relief as set forth below.

### NINTH CLAIM FOR RELIEF – UNJUST ENRICHMENT

133.    Defendants incorporate by reference each of the preceding paragraphs as though fully set forth herein, and further allege as follows:

134.    As a result of Plaintiff's unclean hands and conduct as alleged above, Plaintiff has obtained a finder's fee of approximately $1,062,750 relating to MPT's purchase of shares from certain shareholders of MagiNet, salary and benefits from AMG, corporate shares of AMG and other compensation to which he is not justly entitled.

135.    As a consequence of the acts as alleged above, Plaintiff has been unjustly enriched at the expense of Defendants by retaining a finder's fee of approximately $1,062,750 relating to MPT's purchase of shares from certain shareholders of MagiNet, salary and benefits from AMG, corporate shares of AMG and other compensation worth over $1 million, the exact amount to be proven at trial.  The continued retention by Plaintiff of the above sums and other compensation would constitute unjust enrichment.

136.    In equity and good conscience, Plaintiff should not be permitted to retain the above sums and other compensation, or their equivalent value that thus far he has wrongfully retained.  Plaintiffs should disgorge himself of the above ill-gotten sums and other compensation,

or their equivalent value, and convey the same to Defendants, together with all applicable

interest.

WHEREFORE, Defendants pray for relief as set forth below.

<u>TENNTH CLAIM FOR RELIEF – COMMON COUNTS</u>

137.   Defendants incorporate by reference each of the preceding paragraphs as though

fully set forth herein, and further allege as follows:

138.   Plaintiff is indebted to Defendants for the monies that he has retained in violation

of Defendants' oral contract with Plaintiff, and is under an immediate and unconditional

obligation to convey such monies to Defendants.

WHEREFORE, Defendants pray for relief as set forth below.

<u>ELEVENTH CLAIM FOR RELIEF – BREACH OF ORAL SETTLEMENT AGREEMNT</u>

139.   Defendants incorporate by reference each of the preceding paragraphs as though

fully set forth herein, and further allege as follows:

140.   On or about May 2005, Plaintiff and Yoshimoto entered into an oral contract in

which Yoshimoto agreed to allow MagiNet to pay Plaintiff the finder's fee of approximately

$1,062,750 relating to MPT's purchase of shares from certain shareholders of MagiNet that

Plaintiff had negotiated for himself while he was working for AMG and that he had tried to hide

from Defendants in exchange for (1) Plaintiff's dismissal of this action and (2) Plaintiff's

investment in a future project of Defendants.

141.   Defendants have performed all conditions, covenants and promises required to be

performed on their part in accordance with the terms and conditions of the oral contract,

including allowing MagiNet to pay Plaintiff the finder's fee of approximately $1,062,750 relating

to MPT's purchase of shares from certain shareholders of MagiNet that Plaintiff had negotiated

for himself while he was working for AMG and that he had tried to hide from Defendants.

142.   Beginning in June 2005, Plaintiff breached the oral contract by refusing to dismiss

this action.

/ / /

143.    As a proximate result of Plaintiff's breach of the oral contract, Defendants suffered damages in the amount of approximately $1,062,750 in that this sum went to Plaintiff rather than AMG, and attorneys' fees incurred by Defendants as a result of this action, in an amount to be proven at trial.

WHEREFORE, Defendants pray for relief as set forth below.

## III.    PRAYER FOR RELIEF

WHEREFORE, Defendants pray for judgment against Plaintiff as set forth below.

1.    That Plaintiff take nothing from Defendants by reason of his Complaint;

2.    That judgment be entered in favor of Defendants on all claims for relief asserted in Plaintiff's Complaint;

3.    That Plaintiff's Complaint be dismissed with prejudice against Defendants;

4.    That Defendants be awarded their costs of suit incurred in defense of Plaintiff's Complaint and in prosecution of their counter-claims;

5.    For Defendants' special damages on their counter-claims, according to proof;

6.    For Defendants' general damages on their counter-claims, according to proof;

7.    For punitive damages on Defendants' Fourth Claim for Relief for actual fraud;

8.    For a full and complete accounting of AMG from August 1, 2004 through May 13, 2005;

9.    For a judgment in favor of Defendants and against Plaintiff for the amount found to be due under that accounting;

10.    For a declaration of the rights and interests of Defendants and Plaintiff in AMG and its assets, if any;

11.    For restitution and other equitable relief awarded under California Business and Professions Code section 17203 and on the unjust enrichment claim for relief;

/ / /

/ / /

/ / /

1    12.    For prejudgment interest at the maximum legal rate; and

2    13.    For such other relief as the Court deems just and proper.

3    Dated:  April 14, 2006

                                    MOSLEY & GEARINGER LLP

4

5

6                                   By: /s/ Brian Gearinger_____
                                    MARK L. MOSLEY
7                                   BRIAN GEARINGER

                                    Attorneys for Defendants
8                                   MASUO YOSHIMOTO and M2M, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' ANSWER TO COMPLAINT, COUNTERCLAIM    22    U.S. DISTRICT COURT CASE NO. C05-01985 JSW
AND DEMAND FOR JURY TRIAL

1    Defendants Masuo Yoshimoto and M2M, Inc., demand trial by jury in this action,

2   pursuant to Federal Rule of Civil Procedure 38.

3   Dated:  April 14, 2006

                              MOSLEY & GEARINGER LLP

4

5

6                             By: /s/ Brian Gearinger_____
                              MARK L. MOSLEY
7                             BRIAN GEARINGER

                              Attorneys for Defendants
8                             MASUO YOSHIMOTO and M2M, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' ANSWER TO COMPLAINT, COUNTERCLAIM    23    U.S. DISTRICT COURT CASE NO. C05-01985 JSW
AND DEMAND FOR JURY TRIAL